2018 IL App (2d) 170554
No. 2-17-0554
Opinion filed September 28, 2018

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| MICHAEL HIATT, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 11-L-306 |
| | ) | |
| ILLINOIS TOOL WORKS, | ) | Honorable |
| | ) | Dorothy French Mallen, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE BURKE delivered the judgment of the court, with opinion.
Justice Birkett concurred in the judgment and opinion.
Justice Zenoff dissented, with opinion.

**OPINION**

¶ 1     Plaintiff, Michael Hiatt, appeals an order of the circuit court of Du Page County granting summary judgment in favor of defendant, Illinois Tool Works (ITW). He also appeals certain orders that were in the procedural progression to that final order. For the reasons that follow, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3     Plaintiff was employed by Western Plastics, Inc. (Western Plastics). In October 2007, he sustained serious injuries at work while cleaning a machine. Plaintiff filed suit against multiple parties. All defendants other than ITW either were dismissed or entered into settlement agreements with plaintiff. Plaintiff advanced three legal theories against ITW: (1) ITW was

engaged in a joint venture with Western Plastics, (2) ITW retained control over Western Plastics, and (3) ITW had actual or constructive knowledge that the machine at issue was unreasonably dangerous. In January 2014, the trial court granted ITW's original motion for summary judgment, finding that there were no genuine issues of material fact with respect to any of plaintiff's theories. Additionally, the court *sua sponte* determined that, even if ITW were engaged in a joint venture with Western Plastics, the exclusive-remedy provision of the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2014)) would prohibit plaintiff's recovery. That provision states, in pertinent portion: "[N]o common law or statutory right to recover damages from the employer, his insurer, his broker, *** or the agents or employees of any of them for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act ***." *Id.* § 5(a).

¶ 4    In December 2014, this court reversed the summary judgment and remanded the matter for further proceedings. *Hiatt v. Western Plastics, Inc.*, 2014 IL App (2d) 140178, ¶ 1 (*Hiatt I*). Although we agreed that summary judgment was appropriate with respect to plaintiff's retained-control and unreasonably-dangerous-machine theories (*id.* ¶¶ 117, 121), we held that there was a genuine issue of material fact as to whether ITW and Western Plastics were engaged in a joint venture (*id.* ¶ 102).

¶ 5    We also determined that the trial court erred in *sua sponte* raising the issue of the exclusive-remedy provision of the Act. *Id.* ¶ 105. We noted that "[t]he exclusive-remedy provision is an affirmative defense and is forfeited if not timely raised." *Id.* Furthermore, we explained, a defendant might make a strategic decision not to assert that defense. *Id.* Given that the parties took more than 40 depositions during more than five years of motion practice and

discovery, we reasoned that, "[c]learly, ITW made a strategic decision not to assert the exclusive-remedy provision as a defense, in the hope that it could avoid liability altogether by defeating plaintiff's tort claim." *Id.* ¶ 106. We added that, "[i]f ITW were permitted to raise the exclusive-remedy provision as a defense at this late stage, despite its earlier decision not to assert the defense, then plaintiff would be prejudiced." *Id.* While we recognized that an appellee generally may urge on appeal any point in support of the trial court's judgment, so long as the factual basis for that point was before the trial court (*id.* ¶ 107), we determined that such rule did not apply here:

> "As we have said, ITW chose to litigate this case by defending against plaintiff's tort claim on the merits. Having made the strategic decision not to raise the affirmative defense of the exclusive-remedy provision, it cannot now change its theory on appeal." *Id.* ¶ 108.

¶ 6    ITW did not file a petition for rehearing in this court. It did, however, petition our supreme court for leave to appeal. That petition was denied. *Hiatt v. Western Plastics, Inc.*, No. 118851 (Ill. May 27, 2015).

¶ 7    On remand to the trial court, plaintiff filed a one-count seventh amended complaint[1] against ITW. In February 2016, ITW filed its answer along with its affirmative defenses. As its third affirmative defense, ITW asserted that it was immune from liability pursuant to the exclusive-remedy provision of the Act.

¶ 8    Plaintiff moved to strike ITW's exclusive-remedy defense as barred by *Hiatt I* under the law-of-the-case doctrine. In its memorandum opposing plaintiff's motion, ITW argued that *Hiatt I* "in no way purported to foreclose litigation of the [exclusive-remedy] defense on remand."

---

[1] Plaintiff mislabeled this as the sixth amended complaint.

ITW urged the trial court to analyze its right to raise a new defense "under the ordinary liberal rules regarding amendment of pleadings." To that end, ITW insisted that plaintiff would have a sufficient opportunity to rebut the new defense and would not be surprised or prejudiced. Nor, ITW claimed, would the defense necessitate conducting additional discovery.

¶ 9    While the parties briefed plaintiff's motion to strike the exclusive-remedy defense, ITW filed a motion for summary judgment. According to ITW, plaintiff faced a dilemma. Specifically, ITW maintained, if there was no joint venture between Western Plastics and ITW, then ITW would not be liable for plaintiff's injuries. If, on the other hand, there was a joint venture, then ITW would be shielded by the exclusive-remedy provision of the Act.

¶ 10    In his memorandum opposing summary judgment, plaintiff reiterated his position that *Hiatt I* precluded ITW from asserting the exclusive-remedy defense. In any event, plaintiff argued, the exclusive-remedy provision did not apply, given that ITW did not pay for his workers' compensation benefits. Plaintiff also moved to strike the exhibits that were attached to ITW's motion for summary judgment, for lack of foundation.

¶ 11    Following a hearing on August 10, 2016, the trial court denied plaintiff's motion to strike ITW's exclusive-remedy defense. The trial court recognized that it was obligated to follow this court's mandate. The mandate, the trial court noted, did not contain any particular directions apart from indicating that the case was remanded for further proceedings. When a mandate does not contain directions, the trial court explained, it is necessary to look to and follow the appellate court's holdings. The question for the trial court to answer was, "what did the Appellate Court rule on whether or not the defendant could raise that issue in the Trial Court upon a remand?"

¶ 12    After examining the disposition in *Hiatt I*, the court stated as follows:

"And the way I read this, because there's nothing in those paragraphs anywhere in the mandate or in the opinion that even discusses whether ITW could raise that on remand. I read this and the discussion of the cases by the Appellate Court to be discussing whether or not they would exercise their right to affirm the Summary Judgment based on an alternative basis that was first raised in the Appellate Court and that it would be prejudicial to the plaintiff to allow that to occur in the Appellate Court. And I think it clearly says it cannot now change its theory on appeal; that's it, on appeal.

So in reading this opinion, as I said multiple times, and dissecting it and looking at the cases that they rely on, I am finding that the interpretation of this opinion which I readily admit I have to follow is that it, the Appellate Court declined to affirm the entry of Summary Judgment on the basis of exclusive remedy of the Worker's Comp Act [*sic*] because it would be prejudicial to the plaintiff to consider that for the first time on appeal. But they did not speak and it's completely silent as to whether the defendant could raise that affirmative defense in the Trial Court upon remand.

And, therefore, on the basis of the law of the case, the court is denying the Motion to Strike the Third Affirmative Defense."

¶ 13    Having rejected plaintiff's law-of-the-case argument, the court turned to the issue of whether it would be "too late and prejudicial to the plaintiff" for ITW to raise the exclusive-remedy defense on remand. After considering the factors outlined in *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263 (1992), the court allowed ITW to raise the defense. The court granted plaintiff's motion to strike two of the exhibits supporting ITW's motion for summary judgment. Over plaintiff's objection, however, the court also granted ITW leave to file

documents to authenticate those exhibits. The matter was continued for a hearing on ITW's summary judgment motion.

¶ 14   Plaintiff moved the court to reconsider its order denying his motion to strike ITW's exclusive-remedy defense. On December 15, 2016, the court denied that motion. On July 19, 2017, the court granted ITW's motion for summary judgment.

¶ 15   Plaintiff filed a timely notice of appeal from three orders: (1) the August 10, 2016, order denying his motion to strike ITW's exclusive-remedy defense; (2) the December 15, 2016, order denying his motion to reconsider the August 10 order; and (3) the July 19, 2017, order granting summary judgment in favor of ITW.

¶ 16                            II. ANALYSIS

¶ 17   Plaintiff advances four arguments: (1) pursuant to the law-of-the-case doctrine, ITW was precluded from raising the exclusive-remedy defense; (2) the *Loyola* factors did not support the trial court's decision to allow ITW to raise the defense; (3) the court erred in allowing ITW multiple "bites at the apple" in seeking summary judgment; and (4) summary judgment was improper because the evidence showed that ITW did not contribute to plaintiff's workers' compensation premiums.

¶ 18                          A. Law of the Case

¶ 19   Plaintiff contends that, pursuant to the law-of-the-case doctrine, ITW was precluded from raising the exclusive-remedy defense. "The law-of-the-case doctrine limits relitigation of a previously decided issue in the same case." *Diocese of Quincy v. Episcopal Church*, 2016 IL App (4th) 150193, ¶ 28. This means that "questions of law decided on a previous appeal are binding on the trial court on remand as well as on the appellate court on a subsequent appeal." *People ex rel. Madigan v. Illinois Commerce Comm'n*, 2012 IL App (2d) 100024, ¶ 31. The

interests promoted by the doctrine include protecting the parties' settled expectations, ensuring uniformity of decisions, maintaining consistency during the course of a single case, effectuating the proper administration of justice, and bringing litigation to an end. *Radwill v. Manor Care of Westmont, IL, LLC*, 2013 IL App (2d) 120957, ¶ 8. The doctrine also maintains the prestige of the courts by avoiding "contrary opinions on the same issue in the same case." *Madigan*, 2012 IL App (2d) 100024, ¶ 32. Determining whether the law-of-the-case doctrine applies is a question of law, and we review the trial court's ruling *de novo*. *Rommel v. Illinois State Toll Highway Authority*, 2013 IL App (2d) 120273, ¶ 14.

¶ 20 The parties disagree over whether the mandate in *Hiatt I* prevented ITW from filing an exclusive-remedy defense on remand. Plaintiff contends that the mandate in *Hiatt I* precluded ITW from filing an amendment to raise the exclusive-remedy defense. ITW responds that nothing in the opinion prevented the trial court from allowing it to amend. Accordingly, we must address whether the mandate prevented ITW from filing amended defenses.

¶ 21 In reversing the trial court in *Hiatt I*, this court concluded: "*For the foregoing reasons, we reverse the judgment \*\*\* and remand for further proceedings.*" (Emphasis added.) *Hiatt I*, 2014 IL App (2d) 140178, ¶ 123. After a judgment is reversed and the cause is remanded, the trial court can hold only such further proceedings as conform to the judgment of the appellate tribunal. *Nye v. Nye*, 411 Ill. 408, 413 (1952). Whether our mandate precluded the trial court from allowing ITW to amend its affirmative defenses is a question of law, which we address *de novo*. *Clemons v Mechanical Devices Co.*, 202 Ill. 2d 344, 352 (2002).

¶ 22 We observe that in *Hiatt I* we did not explicitly order the trial court not to allow ITW to amend its defenses. However, a reviewing court is not required to state specific directions in an order reversing a judgment and remanding a cause. In such a case, the court to which the cause

is remanded must examine the reviewing court's opinion and proceed in conformity with the views expressed in it. *Id.* at 353. In *Clemons*, the supreme court noted that the trial court will in some cases be required to allow the amendment of pleadings even when the reviewing court has not explicitly so ordered:

" 'When a judgment is reversed and the cause remanded with directions to proceed in conformity to the opinion then filed, and it appears from the opinion that the grounds of reversal are of a character to be obviated by subsequent amendment of the pleadings or the introduction of additional evidence, it is the duty of the trial court to permit the cause to be re-docketed and then to permit amendments to be made and evidence to be introduced on the hearing just as if the cause was then being heard for the first time.' " (Emphasis omitted.) *Id.* at 353-54 (quoting *Roggenbuck v. Breuhaus*, 330 Ill. 294, 298 (1928)).

¶ 23    ITW maintains that the reversal in *Hiatt I* with respect to the application of the Act was based on two issues: (1) whether the trial court properly *sua sponte* raised the exclusive-remedy defense and (2) whether the defense provided an alternative basis for affirming the summary judgment. See *Hiatt I*, 2014 IL App (2d) 140178, ¶ 104. We held that the trial court erred in *sua sponte* raising the exclusive-remedy defense and that, because an affirmative defense is forfeited if not timely raised, it would have been prejudicial to allow ITW to raise this defense as an alternative basis for affirming the trial court. *Id*. ¶¶ 106-108.

¶ 24    The first holding is not at issue here. As to the second holding, plaintiff argues that we held that ITW had forfeited the exclusive-remedy defense by not timely raising it. We agree that we prevented ITW from raising the defense as an alternative basis to affirm the summary judgment, but only because ITW had not raised it in the trial court and could not do so for the

first time on appeal. *Id*. ¶ 108. As correctly observed by ITW, we did not hold that ITW was precluded from invoking the exclusive-remedy provision on remand. In fact, the parties never requested that we address ITW's ability to raise the defense on remand.

¶ 25 Plaintiff notes our specific points regarding the potential prejudice of raising the exclusive-remedy defense and the strategic decision not to raise the issue. Plaintiff questions why we even addressed the issue if we did not intend to bar the defense on remand. Plaintiff asserts that, if we had intended that our opinion apply only to the case "on appeal," we would have said so.

¶ 26 In particular, plaintiff notes paragraph 106 in *Hiatt I*, which discusses at great length how long the parties engaged in motion practice and discovery and how ITW made a strategic decision not to assert the exclusive-remedy provision, in the hope that it could avoid liability altogether by defeating plaintiff's claim. *Id.* ¶ 106. Plaintiff further points out the portion of the paragraph that states: "If ITW were permitted to raise the exclusive-remedy provision as a defense *at this late stage*, despite its earlier decision not to assert the defense, then plaintiff would be prejudiced." (Emphasis added.) *Id*.

¶ 27 To the extent that the tone of this paragraph might suggest that "late stage" could mean "from this point on," we find that those comments were *obiter dicta*. Clearly, any holding (express or implied) as to whether an amendment would be proper on remand not only would have been beyond the context of the appeal and beyond our purview as a reviewing court, but would have required us to conduct an analysis that we did not undertake. Thus, any comments about the broader scope of the case were literally in passing. They were undoubtedly *dicta* because they were not essential to the outcome of the case and were not "an expression of opinion upon a point in a case argued by counsel." (Internal quotation marks omitted.) *Lebron*

*v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 236 (2010). Furthermore, the law-of-the-case doctrine acts to preclude review of only those legal issues that the court in a prior appeal decided, either expressly or by implication; it does not apply to *dicta*. *Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.*, 988 F.2d 414, 428-29 (3d Cir. 1993). This is especially true here, where neither party argued and we did not discuss the *Loyola* factors, which a court must consider in deciding whether to allow an amended pleading. See *Loyola*, 146 Ill. 2d at 273.

¶ 28    The dissent posits that the remarks in *Hiatt I* about raising the exclusive-remedy defense "at this late stage" were a direct response to an issue that the parties presented in that appeal. We agree. The issue was specifically whether plaintiff could assert the defense for the first time on appeal. *Hiatt I* answered that question in the negative. Any suggestion beyond the resolution of that issue amounts to *dicta*.

¶ 29    In the alternative, the dissent states that *Hiatt I* necessarily implied that plaintiff should be precluded from raising the defense on remand. The dissent's reliance on *Reich v. Gendreau*, 308 Ill. App. 3d 825 (1999), in support of this theory is misplaced.

¶ 30    In *Reich*, the plaintiff's initial and amended complaints contained a *res ispa loquitur* count. That count was dismissed and the plaintiff's later amended complaints did not contain a *res ipsa loquitur* count. Judgment was entered in favor of the defendant, which this court reversed. Citing the rule in *Foxcroft Townhome Owners Ass'n v. Hoffman Rosner Corp.*, 96 Ill. 2d 150, 153 (1983), we held that the plaintiff forfeited the *res ipsa loquitur* claim by failing to reallege it in the amended complaint that ultimately went to trial. *Reich*, 308 Ill. App. 3d at 829. On remand, the plaintiff filed another amended complaint, again alleging *res ipsa loquitur*. Ultimately, in a second appeal, we decided that our earlier holding that the plaintiff forfeited this

claim implicitly barred the plaintiff from raising it on remand, under the law-of-the-case doctrine. *Id*. at 830.

¶ 31    In *Reich*, the *Foxcroft* rule procedurally barred the plaintiff from raising the *res ipsa loquitur* claim on remand. Having gone to trial on an amended complaint that did not reallege the claim resulted in its abandonment. No such procedural bar faces plaintiff here.

¶ 32    The law-of-the-case doctrine encompasses a court's explicit decisions and those issues decided by necessary implication. The trial court's analysis of our holding in *Hiatt I* was correct. As the trial court observed, "[t]here's nothing in the mandate or the opinion that even discusses whether ITW could raise that on remand." Accordingly, we agree with the trial court that the law-of-the-case doctrine did not preclude ITW from raising the exclusive-remedy defense.

¶ 33                                    B. *Loyola* Analysis

¶ 34    Plaintiff argues that the trial court abused its discretion by allowing ITW to raise the exclusive-remedy defense. ITW notes that it did not actually seek to amend its previous answer. Rather, plaintiff filed a seventh amended complaint and ITW presented the defense in its answer to that complaint. However, courts have looked to similar factors of surprise and prejudice in addressing answers to amended complaints. See, *e.g.*, *First National Bank of Lake Forest v. Village of Mundelein*, 166 Ill. App. 3d 83, 89-90 (1988).

¶ 35    Section 2-616(a) of the Code of Civil Procedure provides in pertinent part:

> "(a) At any time before final judgment amendments may be allowed on just and reasonable terms, *** changing the cause of action or defense or adding new causes of action or defenses, and in any matter, either of form or substance, in any process, pleading, bill of particulars or proceedings, which may enable the plaintiff to sustain the

claim for which it was intended to be brought or the defendant to make a defense or assert a cross claim." 735 ILCS 5/2-616(a) (West 2014).

¶ 36 The right to amend a pleading is not absolute but rather is a matter within the trial court's discretion. *CitiMortgage, Inc. v. Parille*, 2016 IL App (2d) 150286, ¶ 44. Accordingly, we will not reverse the trial court's decision absent an abuse of that discretion. "A court abuses its discretion only if it acts arbitrarily, without the employment of conscientious judgment, exceeds the bounds of reason and ignores recognized principles of law; or if no reasonable person would take the position adopted by the court." *Payne v. Hall*, 2013 IL App (1st) 113519, ¶ 12.

¶ 37 The relevant factors considered in determining whether to grant leave to amend a pleading are: "(1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified." *Loyola*, 146 Ill. 2d at 273.

¶ 38 Previous cases have held that a proposed amendment "must meet all four *Loyola Academy* factors." *Hayes Mechanical, Inc. v. First Industrial, L.P.*, 351 Ill. App. 3d 1, 7 (2004) (citing *Loyola*, 146 Ill. 2d at 273). We observe, however, that *Loyola* does not say that a proposed amendment must meet all four factors. Rather, the *Loyola* court held simply that the trial court's denial of leave to amend was an abuse of discretion because the plaintiff there did meet all four factors. In the present case, the problem is best illustrated by the first factor, which is whether the amendment would cure a defective pleading. Here, it is plainly inapplicable because ITW was not trying to cure a defective pleading but was trying to add a new defense. See, *e.g.*, *Clemons*, 202 Ill. 2d at 356 (finding that "the first factor is not relevant to our analysis"). As a general matter, when a party seeks leave to amend, the ultimate question is

whether the amendment would further the ends of justice; the *Loyola* factors are guidelines for the court's liberal exercise of its discretion, not strictures, to that end. See *Lake County Grading Co. v. Forever Construction, Inc.*, 2017 IL App (2d) 160359, ¶ 87.

¶ 39     As to the prejudice factor, plaintiff argues that the amendment prejudiced him because, if the exclusive-remedy defense had been raised earlier, "plaintiff would have submitted different written discovery and asked different questions of the numerous deponents." This bare assertion does not demonstrate prejudice. Plaintiff must show that the amendment " 'hinder[ed] his ability to present his case on its merits.' " *Bloom v. Landy*, 72 Ill. App. 3d 383, 400 (1979) (quoting *Banks v. United Insurance Co. of America*, 28 Ill. App. 3d 60, 64 (1975)). Plaintiff thus must "show substantively what [he] might find or precisely how any further discovery might bear on [his] case." *Emerson Electric Co. v. Aetna Casualty & Surety Co.*, 281 Ill. App. 3d 1080, 1089 (1996). We do not find any prejudice here.

¶ 40     Plaintiff contends that he was prejudiced because he "reasonably relied upon ITW's defenses that existed, after fact discovery was closed, when dealing with the resolution of the claims with the other defendants." Plaintiff, however, does not articulate what he would have done differently if the defense had been raised earlier, and he never requested to reopen discovery.

¶ 41     Regardless, ITW maintains that discovery would have been the same even if the exclusive-remedy defense had been raised at the outset of this litigation, because the very same evidence that was relevant to plaintiff's claim that ITW and Western Plastics were engaged in a joint venture was relevant to whether the exclusive-remedy provision applied. We agree. Section 5(a) of the Act applies to all members of a joint venture because, as a matter of law, they are agents of each other as well as the joint venture. See *Smith v. Metropolitan Sanitary District*

*of Greater Chicago*, 77 Ill. 2d 313, 318 (1979). As such, the evidence plaintiff would have had to present at trial in pursuit of his theory of a joint venture is the same evidence that forms the basis for applying the exclusive-remedy provision.

¶ 42 The amendment was arguably untimely and ITW had previous opportunities to amend its defenses, as the case had been pending a long time and extensive discovery had been conducted. Nevertheless, the trial court did not abuse its discretion, as plaintiff was not prejudiced by the timing of the pleading. See *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 469 (1992) (holding that, even though the plaintiff "had other opportunities *** to amend the pleadings," the trial court did not abuse its discretion in permitting amendment after trial began, because the opponent "was not prejudiced"). As noted, no new discovery was required, and plaintiff did not request to reopen discovery.

¶ 43 Plaintiff argues that he was harmed because he needlessly spent "seven years of litigation." The addition of the defense earlier would not have significantly reduced the period of litigation, because plaintiff had raised multiple causes of action against ITW,[2] not merely on the basis of joint venture, and on the first summary judgment, plaintiff's other causes of action were rejected as a matter of law. Plaintiff also was aware of the possibility that ITW would claim the exclusive-remedy defense given that it had been raised by the alleged co-joint venturer, Western Plastics, by the trial court as a basis for the first summary judgment, and by ITW as a basis to affirm the first summary judgment. Thus, plaintiff could not have been unduly delayed or surprised by ITW's answer to plaintiff's seventh amended complaint. In sum, we find that the trial court, which was intimately aware of the length and nature of the proceedings that preceded

---

[2] There also were several other defendants in the case, which, at least in part, accounted for the extensive discovery.

the addition of the defense, did not abuse its discretion by allowing ITW to raise the defense in response to plaintiff's seventh amended complaint.

¶ 44                              C. Multiple Summary Judgment Motions

¶ 45    Plaintiff contends that the trial court erred in allowing ITW to file "a second and third 'bite at the apple' in order to obtain summary judgment." The "second" bite was the opportunity to raise and move for summary judgment on the exclusive-remedy defense. The "third bite" was the opportunity to authenticate documents offered in support of summary judgment.

¶ 46    The purpose of the summary judgment procedure is to determine whether any genuine issue of material fact exists and to summarily dispose of cases where none exists so as to avoid the congestion of trial calendars and the expense of unnecessary trials. *Loveland v. City of Lewistown*, 84 Ill. App. 3d 190, 192 (1980). Thus, where a party discovers facts that make the case properly resolvable by summary judgment, the case should not have to go to trial simply because there was a prior motion for summary judgment. The trial judge should have the discretion to permit another motion. See *id.*

¶ 47    As noted, the trial court did not abuse its discretion by allowing ITW to raise the exclusive-remedy defense on remand. As pointed out by ITW, to the extent that plaintiff contends that allowing ITW to raise the defense constituted an impermissible "second" bite at the apple, plaintiff merely reiterates his other arguments for reversal. Additionally, we reject plaintiff's argument that the trial court could not consider subsequent motions for summary judgment. To the contrary, trial courts have ample discretion to entertain subsequent motions for summary judgment. See, *e.g.*, *First National Bank of Evergreen Park v. Lambert*, 109 Ill. App. 3d 177, 181 (1982) (the "denial of a summary judgment motion is in the nature of an interlocutory order which may be amended or revised at any time before a final judgment").

¶ 48    Plaintiff cites three cases in support of his assertion that "Illinois [law] is clear that a party or litigant should not be allowed a second bite at the apple." None, however, involve subsequent motions for summary judgment.

¶ 49    Plaintiff argues that the trial court erred by purportedly allowing ITW to belatedly authenticate two documents attached to its motion for summary judgment. The documents to which plaintiff refers are an order from the Illinois Workers' Compensation Commission and a settlement agreement between plaintiff and Western Plastics. Plaintiff argued below that the documents were not authenticated and the trial court agreed. However, plaintiff never asserted that the documents were not authentic. As pointed out by ITW, the order and the settlement both bore plaintiff's own signature, and no one was in a better position than plaintiff to know whether the documents were authentic. Accordingly, we reject this argument.

¶ 50    Regardless, the documents are subject to judicial notice. The Workers' Compensation Commission order is judicially noticeable because it "reflects an official decision of an administrative tribunal" and is "part of the public record." See *Muller v. Zollar*, 267 Ill. App. 3d 339, 341-42 (1994). The settlement between plaintiff and Western Plastics also is judicially noticeable because it is specified in the Workers' Compensation Commission order.

¶ 51                              D. Summary Judgment

¶ 52    Plaintiff last argues that the trial court erred in granting summary judgment to ITW based on the exclusive-remedy provision. "Summary judgment is proper if, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits on file demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Lazenby v. Mark's Construction, Inc.*, 236 Ill. 2d 83, 93

(2010). Whether summary judgment was properly granted is subject to *de novo* review. *Ioerger v. Halverson Construction Co.*, 232 Ill. 2d 196, 201 (2008).

¶ 53 The Act's exclusive-remedy provision states that "[n]o common law or statutory right to receive damages from the employer" or its "agents or employees *** for injury or death sustained by any employee while engaged in the line of his duty as such employee *** is available to any employee who is covered by the provisions of this Act." 820 ILCS 305/5(a) (West 2014).

¶ 54 The sole basis of plaintiff's claim against ITW rests on the allegation that ITW owed plaintiff a duty as a member of an alleged joint venture with Western Plastics. Plaintiff had settled with Western Plastics, as reflected in the Workers' Compensation Commission order. ITW also has acknowledged that it did not earmark any direct payment to Western Plastics toward workers' compensation insurance premiums or benefits. Plaintiff contends that, because ITW itself did not pay any workers' compensation insurance premiums or benefits, it is not entitled to invoke the Act's immunity. ITW responds that all entities participating in a joint venture are entitled to the Act's protection even if only one co-venturer paid workers' compensation insurance premiums or benefits. Because there is no common-law or statutory right to receive damages from an employer or its agents (*id.*), the issue, as aptly noted by the trial court, is whether the immunity afforded to the employer (Western Plastics) by the Act's exclusive-remedy provision extends to the employer's co-venturer in a joint venture (ITW), even though the co-venturer did not specifically earmark any payment to the employer.

¶ 55 In *Smith*, the plaintiff was an employee of a joint venture formed by the defendant and another entity. *Smith*, 77 Ill. 2d at 316. The plaintiff was struck by a truck leased by the defendant to the joint venture, and he suffered injuries, resulting in the amputation of both his

legs. *Id.* The plaintiff brought three counts against the defendant: count I for violations of the Structural Work Act (Ill. Rev. Stat. 1973, ch. 48, ¶ 60 *et seq.*), count II for negligence, and count III for strict liability based on the defendant's having leased the vehicle, which was allegedly defective and caused the plaintiff's injuries. *Smith*, 77 Ill. 2d at 316. The defendant filed a motion for summary judgment, contending that the plaintiff's causes of action were barred because, under section 5(a) of the Act, the plaintiff was an employee of the defendant as a matter of law. *Id.*

¶ 56 The defendant contended that, as a member of the joint venture, it was liable for the payment of benefits awarded under the Act to an employee of the joint venture. Further, the provisions of section 5(a) that extended the exclusive-remedy protection to directors and officers of corporate employers " 'would extend the same protection to the individual members of a joint venture.' " *Id.* at 317. The defendant also contended that it was entitled to the protection of section 5(a) because, in addition to being a member of the joint venture, it was also acting as its agent. *Id.*

¶ 57 The court explained that the rights and liabilities of the members of a joint venture "are tested by the same legal principles which govern partnerships," including that " '[e]very partner is an agent of the partnership for the purpose of its business.' " *Id.* at 318. The court surmised that "it would appear that the members of a joint venture would occupy the same relationship with the joint venture." *Id.* The court thus concluded that, "[i]nsofar as the actions upon which counts I and II were based, defendant's duty to plaintiff, and any liability resulting from the breach thereof, would, as the agent of the joint venture, be coextensive with that of its principal, the joint venture." *Id.* The court therefore held that, as to the causes of action pled in counts I and II, the defendant, by reason of its status as a member of the joint venture, was entitled to the

protection of section 5(a). *Id.* The court did not address which entity actually paid the workers' compensation premiums.

¶ 58    In *Ioerger*, two entities, Midwest Foundation Corporation (Midwest) and Halverson Construction Company, Inc. (Halverson), entered into a joint venture. *Ioerger*, 232 Ill. 2d at 198. They set forth the terms of their business arrangement in a written agreement, which provided, *inter alia*, that profits and losses would be shared 60/40, with each making periodic contributions in proportion to its respective share of the profits and losses, and that Midwest was responsible for establishing workers' compensation insurance. *Id.* at 199. Midwest also was entitled to reimbursement from the joint venture for the incurred costs. *Id.* The injured plaintiffs were employed by and received workers' compensation benefits through Midwest, and they sued Halverson and the joint venture. *Id.* at 200. Halverson and the joint venture both argued that they were cloaked with the same immunity enjoyed by Midwest under section 5(a). *Id.* at 200-01. The trial court agreed and granted both defendants summary judgment. *Id.* at 201.

¶ 59    The supreme court noted that whether an agency relationship exists is normally a question of fact but may be decided as a matter of law if only one conclusion may be drawn from the undisputed facts. *Id.* at 202. As it did in *Smith*, the court noted that a joint venture is essentially the same as a partnership and is subject to the same legal principles. *Id.* The court concluded that, as a co-venturer with Midwest, Halverson was Midwest's agent and thus was entitled to invoke the same immunity afforded to Midwest by the exclusive-remedy provision of the Act. *Id.*

¶ 60    The court further concluded that the joint venture was "inseparable from its constituent entities, Midwest and Halverson," such that, because "[b]oth of those entities" were "immunized by the exclusive remedy provisions ***, it necessarily follows that the Joint Venture was

likewise shielded." *Id*. at 203; see also *Moran v. Gust K. Newberg/Dugan & Meyers*, 268 Ill. App. 3d 999, 1006 (1984) (wherein the First District Appellate Court, applying *Smith*, held that the exclusive-remedy provision barred the plaintiff's claims against the employer's co-venturer and the joint venture because "the liability of the joint venture and [co-venturer] is the same as the liability of [the plaintiff's employer]").

¶ 61 Plaintiff asserts that *Ioerger* stands for the proposition that a party that fails to pay workers' compensation insurance premiums or benefits cannot avail itself of the exclusive-remedy provision. Plaintiff relies on the supreme court's acknowledgment of the general proposition that "allowing a party who has paid nothing toward an injured employee's workers' compensation benefits to nevertheless invoke the Act's immunity to escape tort liability for the employee's injuries would be tantamount to allowing the party 'to have its cake and eat it too.' " *Ioeger*, 232 Ill. 2d at 203.

¶ 62 Initially, the court concluded that the joint venture was entitled to immunity based on its agency relationship with the corporation that employed the injured workers. The court further held that the joint venture should also enjoy immunity because it was obligated under the joint-venture agreement to pay workers' compensation for the employees of both corporations. The court reasoned that, in the joint-venture context, the practical reality is that, although costs might be paid as a formal matter by one of the members of the joint venture, they are ultimately spread among the other members of the joint venture, such that to deny those entities immunity would be "the same as declaring that a party who has paid for the cake may neither keep it nor eat it." *Id*. (citing the provision of the joint-venture agreement expressly providing for reimbursement of costs as a general matter). Thus, contrary to plaintiff's argument that the court "specified" that a member of a joint venture was entitled to immunity *only* because it "contributed to the plaintiff's

workers compensation premium," the court applied the straightforward rule that, because the co-venturer of the plaintiff's employer was deemed an agent of the employer, the co-venturer was entitled to the same immunity afforded to the employer. *Id.* at 202. ITW points out, and we agree, that it would be unfair to subject ITW to the burdens of joint-venture membership, including expanded tort liability and a share of the overhead, while denying it the benefits of that membership, including immunity under the Act.

¶ 63    We applied the same logic in *Hiatt I*. As we stated, a finding that a joint venture existed between Western Plastics and ITW would necessarily entail a coordinate finding that the two shared profits and losses with respect to both "cost improvements" and "overhead," the latter of which would necessarily include the cost of workers' compensation insurance. *Hiatt I*, 2014 IL App (2d) 140178, ¶¶ 95-102.

¶ 64    Plaintiff relies on *Kay v. Centegra Health System*, 2015 IL App (2d) 131187, in support of his argument that immunity under the Act is unavailable because ITW did not pay for workers' compensation insurance. *Kay* never held that immunity under the exclusive-remedy provision extends only to members of a joint venture that contribute to workers' compensation. *Kay* did not even address that argument. Although we noted that Centegra "provided the workers' compensation insurance that applied to" the plaintiff's injury, our decision turned on the status of Centegra as a joint employer, which gave it "authority to, among other things, approve the operating and capital budgets of" the other joint employer and transfer funds between the accounts of the companies. *Id*. ¶¶ 22, 29. Under our rationale in *Kay*, the Act's exclusive-remedy provision applies here. If ITW and Western Plastics were found to be in a joint venture, such a finding would render each the agent of the other, as in the joint-employer relationship in *Kay*.

¶ 65    Although plaintiff does not cite *Burge v. Exelon Generation Co., LLC*, 2015 IL App (2d) 141090, he relied on it below, and therefore we will address it here.  In *Burge*, an employee's injuries arose out of and in the course of his employment with Exelon Nuclear Security, LLC (ENS), and he filed and settled a workers' compensation claim against ENS.  Pursuant to an agreement, the defendant was the sole member of ENS. *Id*. ¶ 2.  In its motion to dismiss, the defendant contended that it was undisputed that it had engaged ENS as a contractor to provide security services on the defendant's premises.  The defendant argued that it was the employer who paid workers' compensation benefits and that, pursuant to section 5(a), the plaintiffs (the injured employee, Rick, and his wife) could not maintain a common-law action against the defendant. *Id*. ¶ 4.  On appeal, the plaintiffs argued that the defendant was not Rick's employer and that, for immunity under section 5(a), the defendant must establish at least that it was legally responsible for payment of workers' compensation benefits for Rick.  *Id*. ¶ 8.  The defendant responded that it was entitled to immunity as the agent of Rick's employer (ENS), regardless of who paid or was obligated to pay for Rick's workers' compensation. *Id*.

¶ 66    Defining " 'agency' " as a " 'fiduciary relationship in which the principal has the right to control the agent's conduct and the agent has the power to act on the principal's behalf,' " we found nothing in the agreement between the defendant and ENS that gave ENS any right to control the defendant. *Id*. ¶ 9 (quoting *Powell v. Dean Foods Co.*, 2013 IL App (1st) 082513-B, ¶ 65).  Accordingly, we concluded that, because ENS had no right to control the defendant, the defendant was not ENS's agent. *Id*.  We further held that the defendant could not claim immunity under the Act for its alleged payment for Rick's workers' compensation benefits, because the defendant failed to prove this fact by affidavit and because the agreement said nothing about the obligation to provide workers' compensation insurance for ENS's employee.

*Id.* ¶ 17. Our decision thus was predicated on the fact that the entities were separate. In the present case, because plaintiff alleges a joint-venture relationship, he cannot claim that the entities are separate. Accordingly, we find *Burge* inapplicable to the facts of this case.

¶ 67 Plaintiff's only claim against ITW is based on his allegation that ITW owed a duty to plaintiff as a member of a joint venture with plaintiff's employer. Under the principles espoused by the supreme court, ITW, as a member of the joint venture, is an agent entitled to the same immunity afforded to Western Plastics by the exclusive-remedy provision of the Act, regardless of whether ITW specifically paid workers' compensation benefits for the joint venture. Plaintiff therefore cannot state a claim against ITW. To paraphrase *Smith*, ITW's duty to plaintiff, and any liability resulting from "the breach thereof" under such a theory, "would, as the agent of the joint venture, be coextensive" with that of the joint venture and co-venturer. See *Smith*, 77 Ill. 2d at 318. As such, the trial court properly granted summary judgment in favor of ITW.

¶ 68                                    III. CONCLUSION

¶ 69 For the reasons stated, we affirm the judgment of the circuit court of Du Page County.

¶ 70 Affirmed.

¶ 71 JUSTICE ZENOFF, dissenting:

¶ 72 In my view, the law-of-the-case doctrine barred ITW from invoking the exclusive-remedy provision of the Act as a defense in this action. Even if the law-of-the-case doctrine did not apply, the trial court still abused its discretion in allowing ITW to advance an affirmative defense that it strategically chose not to raise through years of litigation. Accordingly, I respectfully dissent.

¶ 73                              A. Law-of-the-Case Doctrine

¶ 74 We said the following in paragraph 106 of our disposition in *Hiatt I*:

"Here, ITW concedes that it did not plead the exclusive-remedy provision as an affirmative defense or raise the issue in its motion for summary judgment. Instead, as plaintiff pointed out at oral argument, the parties engaged in more than five years of motion practice and discovery, taking more than 40 depositions, many of which focused on the issue of whether ITW and Western were engaged in a joint venture. Clearly, ITW made a strategic decision not to assert the exclusive-remedy provision as a defense, in the hope that it could avoid liability altogether by defeating plaintiff's tort claim. Nevertheless, at the hearing on ITW's summary-judgment motion, following the parties' lengthy arguments that did not discuss the exclusive-remedy provision, the trial court *sua sponte* raised the issue. This was error. [Citation.] *If ITW were permitted to raise the exclusive-remedy provision as a defense at this late stage, despite its earlier decision not to assert the defense, then plaintiff would be prejudiced.*" (Emphasis added.) *Hiatt I*, 2014 IL App (2d) 140178, ¶ 106.

The majority today effectively reads this entire paragraph, and the highlighted language in particular, out of our disposition in *Hiatt I*, disregarding it as mere *dicta*. *Supra* ¶ 27.

¶ 75    *Obiter dictum* refers to "a remark or opinion uttered by the way" (*Cates v. Cates*, 156 Ill. 2d 76, 80 (1993)) or " 'as an aside' " (*In re Estate of Friedman Scherr*, 2017 IL App (2d) 160889, ¶ 16 (quoting *Exelon Corp. v. Department of Revenue*, 234 Ill. 2d 266, 277 (2009))). Our discussion in paragraph 106 of *Hiatt I* did not amount to remarks or opinions uttered by the way or as an aside. Nor were our comments based on hypothetical facts that were not before us. *Cf. Scherr*, 2017 IL App (2d) 160889, ¶ 16. We instead responded directly to the issues that were presented by the parties in the appeal. Specifically, ITW attempted to invoke a defense on appeal that it had elected not to pursue earlier in the litigation. In *Hiatt I*, we determined that it

was too late for ITW to assert that defense, as it would result in prejudice to plaintiff. That was not merely the "tone" of paragraph 106 (see *supra* ¶ 27); that was what we said. Contrary to what the majority now claims, our discussion was neither "beyond the context of the appeal" nor "beyond our purview as a reviewing court." *Supra* ¶ 27.

¶ 76 The majority notes that we did not specifically mention the "*Loyola* factors" in our decision in *Hiatt I*. *Supra* ¶ 27. Although that is true, our discussion left no question as to where we stood with respect to the *Loyola* analysis. We made it clear in *Hiatt I* that two of the four *Loyola* factors weighed against ITW: the untimeliness of the new defense and the prejudice that it would occasion to plaintiff. Previous case law, including some from this court, has indicated that all four *Loyola* factors must be met to allow an amendment. See, *e.g.*, *McDonald v. Lipov*, 2014 IL App (2d) 130401, ¶ 49. After we emphasized the prejudice that plaintiff would suffer if ITW were to raise the defense "at this late stage" (*Hiatt I*, 2014 IL App (2d) 140178, ¶ 106), it is difficult to fathom how ITW was justified in its efforts to raise the same defense at an even later stage in the litigation—on remand.

¶ 77 Even had we not explicitly said in *Hiatt I* that it was too late for ITW to raise the defense, that was certainly the necessary implication of our discussion. The law-of-the-case doctrine "encompasses not only the reviewing court's explicit decisions, but those issues decided by necessary implication." *Diocese of Quincy*, 2016 IL App (4th) 150193, ¶ 28; see also *Rommel*, 2013 IL App (2d) 120273, ¶ 15.

¶ 78 Our decision in *Reich* illustrates how an issue might be decided by necessary implication. The plaintiff in that case sought damages related to an injury that he sustained in an elevator accident. *Reich*, 308 Ill. App. 3d at 827. In the earliest iterations of his complaint, he included a count based on the theory of *res ipsa loquitur*. *Reich*, 308 Ill. App. 3d at 827. The trial court

granted the defendants' motion to dismiss that count. *Reich*, 308 Ill. App. 3d at 827. The plaintiff thereafter amended his complaint but did not re-allege his *res ipsa loquitur* theory. *Reich*, 308 Ill. App. 3d at 827. The matter then proceeded to trial, and the court directed a verdict in favor of the defendants. *Reich*, 308 Ill. App. 3d at 827. The plaintiff appealed that decision (*Reich I*). *Reich*, 308 Ill. App. 3d at 827. In *Reich I*, we held that the trial court erred in directing a verdict in favor of the defendants, and we reversed the judgment and remanded the matter. *Reich*, 308 Ill. App. 3d at 827. We also determined in *Reich I* that the plaintiff had "waived the issues related to *res ipsa loquitur*" both by failing to reallege that theory in his amended complaints and by failing to include those issues in his notice of appeal. *Reich*, 308 Ill. App. 3d at 827.

¶ 79 On remand, the plaintiff amended his complaint yet again and reasserted his *res ipsa loquitur* theory. *Reich*, 308 Ill. App. 3d at 827. The defendants moved to dismiss that count based on the law-of-the-case doctrine. *Reich*, 308 Ill. App. 3d at 827. The trial court certified the following question for review pursuant to Illinois Supreme Court Rule 308 (eff. Feb. 1, 1994): " 'whether plaintiff *** is barred pursuant to the doctrine of the 'law of the case' from refilling [*sic*] a *res ipsa loquitur* count under [*Reich I*]?' " *Reich*, 308 Ill. App. 3d at 828.

¶ 80 We answered that question in the affirmative. We reasoned that "*Reich I* explicitly decided that plaintiff waived issues related to *res ipsa loquitur* and implicitly decided that the trial court's dismissal of the count based on *res ipsa loquitur* had become the law of the case." *Reich*, 308 Ill. App. 3d at 829. We emphasized that the plaintiff "did not challenge the decisions made in *Reich I* either by petitioning for leave to reconsider or by seeking leave to appeal to the supreme court." *Reich*, 308 Ill. App. 3d at 829. Accordingly, we held, "[t]he decisions made in *Reich I* thus became the law of the case, and plaintiff [was] therefore barred from reopening a

decided issue by including a count based on *res ipsa loquitur* in an amended complaint on remand." *Reich*, 308 Ill. App. 3d at 829-30.

¶ 81 Similarly, the trial court's order here allowing ITW to assert the exclusive-remedy defense on remand ran contrary to both our explicit and implicit decisions in *Hiatt I*. Significantly, we did not characterize ITW's delay in asserting the defense as a mere technical forfeiture. We instead emphasized that ITW made a strategic choice not to assert that defense through years of litigation (*Hiatt I*, 2014 IL App (2d) 140178, ¶ 106), which is more in the nature of a waiver than a forfeiture (see *State Farm Mutual Automobile Insurance Co. v. Burke*, 2016 IL App (2d) 150462, ¶ 73 ("Waiver is an intentional relinquishment of a known right.")). As in *Reich*, the necessary implications of our decision and discussion in *Hiatt I*, if not our explicit holding, precluded ITW from raising its forfeited/waived defense on remand.

¶ 82 The majority finds *Reich* distinguishable insofar as it involved the *Foxcroft* rule. Indeed, the majority seems to limit *Reich*'s scope to cases involving *Foxcroft*'s particular "procedural bar." *Supra* ¶ 31. I do not read *Reich* so narrowly. I believe that the case supports the broader proposition that the law-of-the-case doctrine prevents a party from ignoring a reviewing court's finding of waiver by later attempting to amend its pleadings on remand. See *Reich*, 308 Ill. App. 3d at 829 ("Thus, the question before us is whether under *Reich I*, where the court clearly ruled that plaintiff waived issues related to *res ipsa loquitur*, the doctrine of the law of the case bars plaintiff from including a count based on *res ipsa loquitur* in an amended complaint on remand."). It should not matter whether that waiver stemmed from a party's abandonment of a claim in the trial court (*i.e.*, a *Foxcroft* issue) as opposed to a party's strategic failure to raise the claim in the first place.

¶ 83 Following ITW's lead, the majority frames the issue as "whether the *** mandate in

*Hiatt I* prevented ITW from filing an exclusive-remedy defense on remand." *Supra* ¶ 20. The rule articulated in *Clemons*, which the majority cites, is of no use to ITW, because the basis for our reversal in *Hiatt I* (the forfeiture/waiver of ITW's exclusive-remedy defense due to its strategic failure to assert the defense through years of litigation) could not " 'be obviated by subsequent amendment of the pleadings or the introduction of additional evidence.' " (Emphasis omitted.) *Clemons*, 202 Ill. 2d at 353-54 (quoting *Roggenbuck*, 330 Ill. at 298). Simply put, ITW could not unwind the clock to ameliorate the prejudice to plaintiff that we noted in *Hiatt I*.

¶ 84 For these reasons, I would hold that the law-of-the-case doctrine barred ITW from raising the exclusive-remedy defense on remand following our decision in *Hiatt I*.

¶ 85                                  B. *Loyola* Factors

¶ 86 Even if the law-of-the-case doctrine did not apply, it is my view that the trial court abused its discretion in allowing ITW to raise the exclusive-remedy defense seven years into the litigation.

¶ 87 Our supreme court has identified four factors for a trial court to consider when determining whether to allow an amendment to a pleading: "(1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified." *Loyola*, 146 Ill. 2d at 273.

¶ 88 I agree with the majority that the first factor was not relevant here, insofar as ITW was not attempting to cure any particular defect in its pleading. See *supra* ¶ 38. Nor is there any disagreement with respect to the fourth factor, as even the trial court conceded that "there were previous opportunities to amend the pleading." The majority acknowledges this as well. See

*supra* ¶ 42 ("ITW had previous opportunities to amend its defenses.").

¶ 89     With respect to the third factor, timeliness, it must be remembered that plaintiff sustained his injuries in 2007 and that this lawsuit has been pending since February 2009.  Additionally, in all iterations of his complaint, plaintiff alleged that ITW "did not contribute to Western's worker's compensation insurance."  The workers' compensation issue was quite literally staring ITW in the face, yet ITW intentionally declined to pursue the exclusive-remedy defense prior to the original appeal.  As we noted in *Hiatt I*, "[c]learly, ITW made a strategic decision not to assert the exclusive-remedy provision as a defense, in the hope that it could avoid liability altogether by defeating plaintiff's tort claim."  *Hiatt I*, 2014 IL App (2d) 140178, ¶ 106.  ITW's strategy proved less than completely successful in that respect, as we concluded that there was a genuine issue of material fact as to whether ITW was engaged in a joint venture with Western Plastics.  *Hiatt I*, 2014 IL App (2d) 140178, ¶ 102.

¶ 90     Our mandate in *Hiatt I* issued on July 17, 2015.  Instead of immediately requesting leave to amend its answer to add the exclusive-remedy defense, in October 2015 ITW filed a motion to bifurcate the proceedings for purposes of trial.  Specifically, ITW requested a preliminary jury trial for the limited purpose of determining whether it was engaged in a joint venture with Western Plastics.  ITW proposed that, if the jury found that there was indeed a joint venture, the matter would proceed to a second trial, on the issues of liability and damages.  In December 2015, the trial court denied ITW's motion to bifurcate the proceedings.  By the time ITW finally raised the exclusive-remedy defense on remand, in February 2016, plaintiff had already disclosed his expert witnesses.

¶ 91     The majority proposes that ITW was merely "arguably untimely" in its efforts to pursue the exclusive-remedy defense.  *Supra* ¶ 42.  I believe that the defense was unquestionably

untimely. See *McDonald*, 2014 IL App (2d) 130401, ¶ 50 (claims added to a complaint years into the litigation while the cause was on remand following a first appeal "were not timely filed"). ITW offered nothing but feeble excuses for its delays. For example, in the trial court, ITW suggested that it could not have raised the exclusive-remedy defense until its alleged co-venturer, Western Plastics, settled with plaintiff. The trial court properly rejected ITW's misguided argument on that point. Even upon remand, ITW wasted time pursuing a motion to bifurcate the proceedings instead of immediately seeking leave to present the defense. The reality is that nothing prevented ITW from raising the defense many years ago.

¶ 92    In the course of overlooking ITW's flagrant lack of diligence in pursuing the exclusive-remedy defense, the majority conflates the timeliness factor with the prejudice factor. See, *e.g.*, *supra* ¶ 42 (despite previous opportunities to amend, "plaintiff was not prejudiced by the timing of the pleading"). Moreover, instead of holding ITW accountable for its delay in pursuing the defense, the majority improperly points the finger at plaintiff. See *supra* ¶ 43 ("Plaintiff also was aware of the possibility that ITW would claim the exclusive-remedy defense given that it had been raised by the alleged co-joint venturer, Western Plastics, by the trial court as a basis for the first summary judgment, and by ITW as a basis to affirm the first summary judgment.").

¶ 93    The last factor to consider is whether plaintiff would be prejudiced if ITW were allowed to assert the exclusive-remedy defense seven years into the litigation and after plaintiff had disclosed his experts. The majority mistakenly assumes that "discovery would have been the same even if the exclusive-remedy defense had been raised at the outset of the litigation, because the very same evidence that was relevant to plaintiff's claim that ITW and Western Plastics were engaged in a joint venture was relevant to whether the exclusive-remedy provision applied." *Supra* ¶ 41. As we noted in *Hiatt I*, the parties engaged in extensive motion practice and took

more than 40 depositions, "many of which focused on the issue of whether ITW and Western were engaged in a joint venture." *Hiatt I*, 2014 IL App (2d) 140178, ¶ 106. The present dispute between the parties regarding the applicability of the exclusive-remedy provision is a purely legal issue, not a factual one. Specifically, their only disagreement concerns whether a co-venturer who does not contribute to the injured person's workers' compensation premiums may invoke the defense. Given that the trial court (and now the majority of this court) ultimately agreed with ITW's legal position with respect to the defense, much of the discovery on the joint-venture issue could have been avoided had ITW timely raised the defense. The majority overlooks this aspect of the prejudice.

¶ 94    Perhaps most important, we said in *Hiatt I* that "[i]f ITW were permitted to raise the exclusive-remedy provision as a defense at this late stage, despite its earlier decision not to assert the defense, then plaintiff would be prejudiced." *Hiatt I*, 2014 IL App (2d) 140178, ¶ 106. Even assuming that our conclusion is not the law of the case on the question of prejudice (although I believe that it is), there is no reason for this court to issue a contradictory opinion in the same case four years later, absent some identifiable error in our original decision.

¶ 95    Finally, although the majority believes that plaintiff did not make a sufficient showing of prejudice, as detailed above, the two other relevant *Loyola* factors (timeliness and previous opportunities to amend) unquestionably weighed against allowing ITW to add a new affirmative defense on remand.

¶ 96    For these reasons, I would respectfully reverse the trial court's summary judgment in ITW's favor, along with the August 10 and December 15, 2016, orders, which were in the procedural progression to that final order.