2020 IL App (2d) 180890-U
No. 2-18-0890
Order filed March 24, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| PRATIMA MUZUMDAR and JAGDISH MUZUMDAR, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 13-L-1227 |
| DANIEL F. KONICEK and KONICEK & DILLON, P.C., | ) ) ) | Honorable Ronald D. Sutter, |
| Defendants-Appellees. | ) | Judge, Presiding. |

_____

JUSTICE ZENOFF delivered the judgment of the court.
Justices McLaren and Hutchinson concurred in the judgment.

**ORDER**

*Held*: The appellate court reversed the trial court's grant of summary judgment in favor of the defendants and remanded for further proceedings where the issue of the proximate cause of the plaintiffs' loss was a question of fact.

¶ 1    This is the third appeal brought by plaintiffs, Pratima and Jagdish Muzumdar, arising out of their 1989 purchase of a home with roof leaks. The plaintiffs' lawsuit against the seller resulted in summary judgment in the seller's favor when plaintiffs' attorney failed to file any response to

the seller's motion for summary judgment. Plaintiffs then hired defendants, Daniel F. Konicek and Konicek & Dillon, P.C. (collectively Konicek), to prosecute a legal malpractice suit against their former attorneys. After Konicek filed suit against former counsel, allegedly beyond the statute of limitations as to both lawyers, plaintiffs sued Konicek for legal malpractice. The trial court granted summary judgment in Konicek's favor, and plaintiffs appeal. We reverse and remand for further proceedings.

¶ 2                                    I. BACKGROUND

¶ 3                          A. Plaintiffs' Suit Against Their Seller

¶ 4      In 1989, plaintiffs purchased a home in Oakbrook, Illinois, from Raija Casey. In September 1993, plaintiffs experienced extensive roof leaks. In October 1993, plaintiffs hired an inspector, Tuschall, to determine the cause of the leaks and the extent of the damage. In November 1993, Tuschall reported to plaintiffs that the roof had been leaking for many years and that temporary repairs that had been made were ineffective. Tuschall's report prompted Pratima to ask Casey whether she had made the repairs, and Casey denied that there were leaks during her ownership of the property. Plaintiffs began making necessary repairs. Then, in 2001, plaintiffs were informed by another roofer that he had made "cosmetic" and "patchwork" repairs to the roof when Casey owned the home.

¶ 5      On October 17, 2003, 14 years after plaintiffs purchased the home, they sued Casey, alleging that she fraudulently concealed the condition of the roof when she sold them the house. At the summary-judgment stage, plaintiffs' attorney was Christopher L. Haas. Casey moved for summary judgment on the basis that the statute of limitations had expired. The court gave Haas numerous continuances to respond to Casey's motion for summary judgment. When Haas had not filed any response after six months, the court granted Casey's motion.

¶ 6                                    B. The First Appeal

¶ 7      Plaintiffs appealed the grant of summary judgment in Casey's favor. *Muzumdar v. Casey*,
No. 2-06-1087 (2008) (unpublished order under Supreme Court Rule 23) (*Muzumdar I*). Plaintiffs
contended that they could rely on their complaint to establish a genuine issue of material fact as to
Casey's liability. *Muzumdar I*, slip order at p. 14.

¶ 8      Our first inquiry was whether Casey established her factual position that the statute of
limitations barred the suit. *Muzumdar I*, slip order at p. 15. We determined that she did. *Muzumdar
I*, slip order at p. 18. Then, the burden shifted to plaintiffs to prove the existence of facts, apart
from the allegations of the complaint, to support their position that the lawsuit was timely filed
after they discovered the fraud. *Muzumdar I*, slip order at p. 19. Plaintiffs asserted that they
discovered the fraud in 2001. *Muzumdar I*, slip order at p. 18-19. Applying the five-year statute of
limitations found in section 13-215 of the Code of Civil Procedure (Code) (735 ILCS 5/13-215
(West 2006)) for fraudulent concealment of a cause of action, plaintiffs argued that their 2003
filing was timely. *Muzumdar I*, slip order at p. 19. To establish that Casey concealed the cause of
action, plaintiffs relied on an affidavit (the Pratima affidavit) in which Pratima stated that Casey,
in 1993, denied experiencing any leaks or making any repairs. *Muzumdar I*, slip order at p. 20.
Thus, plaintiffs reasoned, they did not discover their cause of action until the roofer informed them
in 2001 that Casey had made repairs to the leaky roof.

¶ 9      However, plaintiffs did not submit the Pratima affidavit in response to Casey's motion for
summary judgment. *Muzumdar I*, slip order at p. 20. Instead, after the court denied Haas yet a
further continuance to file a response to Casey's summary judgment motion, Haas filed a motion
to reconsider to which he attached the Pratima affidavit. Had the Pratima affidavit been submitted
in response to Casey's motion for summary judgment, we opined, it would have established an

affirmative act on Casey's part to conceal the cause of action. *Muzumdar I*, slip order at p. 20. Due to the untimely presentation of that affidavit to the trial court, we affirmed the grant of summary judgment in Casey's favor. *Muzumdar I*, slip order at p. 24.

¶ 10                                  C. Plaintiffs' Suit Against Haas

¶ 11    As a result of plaintiffs' loss of their cause of action against Casey, they retained Konicek to sue Haas for legal malpractice. Plaintiffs also named as defendants attorney John P. Cooney and Cooney and Associates (collectively Cooney) under a theory of vicarious liability as Haas's principals. The parties agree that Haas was employed as an associate attorney by Cooney when plaintiffs retained Haas.

¶ 12                                  1. *The Tolling Agreement*

¶ 13    Effective June 13, 2008, Konicek, Haas, and Cooney entered into a "tolling agreement" to extend the statute of limitations for plaintiffs to file a legal malpractice lawsuit against Haas and Cooney. The tolling agreement provided (1) that it would terminate on December 15, 2008, or 14 days after any party gave written notice that it was terminating the agreement, whichever occurred earlier, (2) plaintiffs had to commence suit within 30 days after termination, and (3) the parties could extend the term of the agreement in a writing executed by all parties.

¶ 14                          2. *The First Extension of the Tolling Agreement*

¶ 15    On December 15, 2008, the parties agreed in writing to extend the tolling agreement to March 31, 2009. That extension also contained the language: "The same terms and conditions of the Agreement remain."

¶ 16                          3. *The Second Extension of the Tolling Agreement*

¶ 17    On February 6, 2009, Konicek prepared and signed a second extension of the tolling agreement to October 1, 2009. This extension was contingent upon Haas filing an appellate brief

for the plaintiffs by March 31, 2009,[1] and recited that "the same terms and conditions of the Agreement remain." Cooney did not sign that extension. The record is ambiguous with respect to whether Haas signed it.

¶ 18    On March 31, 2009, Konicek wrote to Cooney asking whether Cooney agreed to the second extension. John P. Cooney, on behalf of Cooney, replied: "Extension granted per original terms of the Tolling Agreement by amend [*sic*] par. 7(b) to October 15, 2009." Paragraph 7(b) of the tolling agreement was the termination date. On June 1, 2009, Konicek served notice in writing to Cooney and Haas that the tolling agreement was terminated effective 14 days from the date of the notice. The reason for the termination was Haas's failure to file the appellate brief by March 31, 2009.

¶ 19                    4. *Konicek's Reputed Side Agreement With Haas*

¶ 20    On April 8, 2009, Konicek inquired of Haas whether he filed the appellate brief on March 31, 2009. Haas replied that he did not, but that the brief would be completed by April 30, 2009. Konicek responded: "I will look for a copy of the appeal by April 30, 2009." Haas interpreted this as Konicek's agreement to toll the statute of limitations as to Haas until April 30, 2009. Haas never filed the brief. Cooney was unaware of any side agreements to extend the statute of limitations as to Haas.

¶ 21                    5. *The Trial Court's Dismissal of Cooney*

¶ 22    On July 2, 2009, plaintiffs filed a legal malpractice suit against Haas and Cooney. Plaintiffs filed a first-amended complaint on September 2, 2009. Cooney and Haas moved to dismiss the

---

[1] Haas filed two appeals in the *Casey* case, one of which (against Casey's realtor and others) this court dismissed for lack of appellate jurisdiction. When the jurisdictional defect was cured, Haas was to refile the dismissed appeal. Haas never refiled that appeal.

first-amended complaint on the ground that it was barred by the two-year statute of limitations applicable to legal malpractice claims. The court (Judge Bongiorno) granted Cooney's motion. The court (Judge Bongiorno) denied Haas's motion without prejudice and ruled that Haas could plead the statute of limitations as an affirmative defense. Plaintiffs appealed the Cooney dismissal pursuant to Illinois Supreme Court Rule 304(a) (eff. March 8, 2016). The case against Haas remained pending in the trial court.

¶ 23                     6. *The Second Appeal*

¶ 24     Plaintiffs and Cooney were the parties to the second appeal. The issue was whether the second extension of the tolling agreement, which Cooney did not sign, was effective to extend that agreement beyond March 31, 2009. We held that it was not, making the filing of the complaint against Cooney on July 2, 2009, untimely. *Muzumdar II*, 2011 IL App (2d) 100884-UB, ¶ 21.

¶ 25             7. *The Dismissal of the Suit Against Haas for Want of Prosecution*

¶ 26     Meanwhile, as noted, plaintiffs' malpractice suit against Haas remained pending in the trial court. On April 26, 2012, on notice to plaintiffs, Konicek withdrew as their counsel. By this time, plaintiffs had retained attorney Philip J. Nathanson to represent them in a malpractice action against Konicek. On January 23, 2013, Konicek advised Nathanson that the Haas lawsuit was still pending.[2]

¶ 27     The Haas matter was before the trial court for status on March 5, 2013. The court continued the case to March 19, 2013, and ordered all parties to appear or the case would be dismissed for want of prosecution. The order required Haas, who was present in court, to provide notice to

---

[2] The record supports the inference that plaintiffs had been aware of the continued pendency of the Haas suit even before Konicek's communication to Nathanson.

plaintiffs. When no one appeared on March 19, the court dismissed the suit for want of prosecution (DWP). Nathanson did not refile the lawsuit within one year as provided in section 13-217 of the Code (735 ILCS 5/13-217 (West 2018)).

¶ 28                              D.   Plaintiffs' Suit Against Konicek

¶ 29     Nathanson's theory was that Konicek filed suit against both Cooney and Haas beyond the statute of limitations. On March 9, 2012, Nathanson filed suit on plaintiffs' behalf against Konicek for legal malpractice arising from their failure to obtain a valid second extension of the tolling agreement. Konicek moved for summary judgment. Konicek argued that, although plaintiffs' suit against Cooney was time-barred, the suit against Haas remained pending and was, therefore, viable for approximately two years after Konicek withdrew as counsel. Konicek reasoned that (1) plaintiffs' claim against Cooney was derivative of their claim against Haas, so that the dismissal of Cooney did not impair their possible recovery of damages, and (2) Nathanson's failure to prosecute plaintiffs' suit against Haas proximately caused any injury. Plaintiffs countered that they did not have a viable cause of action against Haas after our decision in *Muzumdar II*. Plaintiffs filed a cross-motion for partial summary judgment on the ground that Konicek filed suit against both Cooney and Haas beyond the statute of limitations. The trial court (Judge Sutter) denied plaintiffs' cross-motion but granted Konicek's motion for summary judgment. The court found that the second extension of the tolling agreement was effective as to Haas because "there's no question" that he signed it.[3] Therefore, the court opined, plaintiffs' suit against Haas was timely

_____

[3] In *Muzumdar II*, this court noted that two different versions of the second extension appear in the record. One version bears a signature that purports to be Haas's, while another version does not bear Haas's signature. *Muzumdar II*, 2011 IL App (2d) 100884-UB, ¶ 5. We also pointed

and remained viable. The court found that Nathanson's negligence in allowing that suit to be dismissed for want of prosecution was a superseding cause of plaintiffs' injuries. After the court denied plaintiffs' motion to reconsider, they filed a timely notice of appeal.

¶ 30                                                    II. ANALYSIS

¶ 31    Preliminarily, two matters require our attention. On February 13, 2020, Konicek filed a motion to strike portions of plaintiffs' reply brief that cited a supplemental record which plaintiffs never filed. Plaintiffs did not respond to Konicek's motion to strike. On February 21, 2020, this court granted that motion in part and denied it in part.

¶ 32    On February 28, 2020, plaintiffs filed a motion to vacate our February 21 order and for leave to file the supplemental record. Konicek's response was due on March 4, 2020. At oral argument on March 2, 2020, Konicek indicated that they would file a written response. Therefore, this court ordered plaintiffs' motion to vacate and to file the supplemental record taken with the case. Plaintiffs' attorney did not express confusion over that order. Nevertheless, *without leave of this court,* plaintiffs' attorney filed the supplemental record on March 4, 2020. Also, on that date, but after the supplemental record was filed, Konicek filed its response objecting to the filing of the supplemental record on the basis that the documents contained therein were not before the trial court. We hereby deny plaintiffs' motion to vacate and to file the supplemental record, and we strike the improperly filed supplemental record. This court's order of February 21, 2020, stands.

_____

out that, while plaintiffs represented that Haas signed the document, the record contains no affidavit or correspondence from Haas attesting that he signed it. *Muzumdar II*, 2011 IL App (2d) 100884-UB, ¶ 5.

¶ 33    Next, we must comment on the state of plaintiffs' paper brief. Pursuant to our local rule 101(c), paper copies of briefs must be securely bound on the left side. Plaintiffs, who attached their appendix to their opening brief, filed over five hundred loose pages secured only with a rubber band. We need not point out that appeals generate a staggering amount of paper. The purpose of the rule is to expedite the court's review. Hundreds of loose pages hinder review. Our local rule mirrors Illinois Supreme Court Rule 341(e) (eff. May 25, 2018). "The rules of procedure concerning appellate briefs are rules and not mere suggestions." *Niewold v. Fry*, 306 Ill. App. 3d 735, 737 (1999). It is within our discretion to strike noncompliant briefs and dismiss the appeal. *Niewold*, 306 Ill. App. 3d at 737. We decline to do so in this case, preferring instead to issue a stern admonishment to counsel that future rules violations may result in sanctions.

¶ 34    Turning to the merits, plaintiffs contend that the court erred in granting summary judgment in Konicek's favor. Specifically, plaintiffs argue that their suit against Haas was barred by the statute of limitations, or, at least, they argue, there is a question of fact whether they could have pursued it after this court's decision in *Muzumdar II*. Konicek argues that the proximate cause of plaintiffs' loss was their own negligence in failing to prosecute the still-viable suit against Haas. Konicek also argues that any damages in the underlying case against Haas are speculative, as no one could predict the outcome of that case had plaintiffs prosecuted it. Further, Konicek argues that Haas's failure to file the Pratima affidavit in the Casey case did not cause plaintiffs to lose that case.

¶ 35    Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Seymour v. Collins*, 2015 IL 118432, ¶ 42. Summary judgment is a drastic measure that should be granted only when the movant's right to judgment is clear and free from doubt. *Seymour*, 2015 IL 118432, ¶ 42. On a motion for summary

judgment, the trial court construes the record strictly against the movant and liberally in favor of the nonmovant. *Seymour*, 2015 IL 118432, ¶ 42. If the plaintiff fails to establish any element of his or her cause of action, summary judgment in favor of the defendant is proper. *Merca v. Rhodes*, 2011 IL App (1st) 102234, ¶ 38. We review a grant of summary judgment *de novo*. *Seymour*, 2015 IL 118432, ¶ 42. *De novo* review means that we perform the same analysis that the trial judge would perform. *Merca*, 2011 IL App (1st) 102234, ¶ 40.

¶ 36    A cause of action for legal malpractice requires (1) an attorney-client relationship, (2) a duty arising out of that relationship, (3) a breach of the duty, and (4) actual damages or injury proximately caused by the breach. *Romano v. Morrisroe*, 326 Ill. App. 3d 26, 28 (2001).  "Injury" for purposes of legal malpractice means a loss for which the plaintiff can seek monetary damages. *Fox v. Seiden*, 382 Ill. App. 3d 288, 295 (2008).

¶ 37    "Proximate cause" in a legal malpractice case is established where the plaintiff would not have suffered actual damages "but for" the attorney's negligence. *In re Estate of Powell*, 2014 IL 115997, ¶ 24. The issue of proximate cause in a legal malpractice suit is generally a factual issue. *Nettleton v. Stogsdill*, 387 Ill. App. 3d 743, 753 (2008). Proximate cause should be determined as a matter of law only when (1) the facts are undisputed and (2) there can be no difference in the judgment of reasonable persons as to the inferences that can be drawn from the facts. *Nettleton*, 387 Ill. App. 3d at 753.

¶ 38    Further, the theory underlying a cause of action for legal malpractice is that the plaintiff-client would have been compensated for an injury caused by a third party absent his or her attorney's negligence. *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill. 2d 218, 226 (2006). Where the alleged malpractice involves litigation, no claim exists unless the attorney's negligence caused the loss of an underlying cause of action. *Tri-G*, 222 Ill. 2d at 226. If, because of the

attorney's negligence, the underlying cause of action never reached trial, the plaintiff must prove that he or she would have been successful in that underlying action. *Tri-G*, 222 Ill. 2d at 226. Thus, the legal malpractice plaintiff must prove a case within a case. *Tri-G*, 222 Ill. 2d at 226.

¶ 39 Here, plaintiffs' legal malpractice claim against Konicek is premised on Konicek's negligence in losing the cause of action against Haas and Cooney. Plaintiffs' case against Haas and Cooney was premised on those attorneys' negligence in losing the cause of action against Casey. Our first inquiry is whether plaintiffs would have been successful against Casey.

¶ 40                              A. The Preclusive Effect of *Muzumdar I*

¶ 41 Konicek seeks to relitigate whether Haas's failure to file the Pratima affidavit in response to Casey's motion for summary judgment caused plaintiffs to lose their cause of action against Casey. We hold that relitigation of that issue is precluded by the doctrine of law of the case.

¶ 42 "The law-of-the-case doctrine limits relitigation of a previously decided issue in the same case." *Rommel v. Illinois State Toll Highway Authority*, 2013 IL App (2d) 120273, ¶ 15. Pursuant to that doctrine, questions of law decided on a previous appeal are binding on the trial court on remand as well as on the appellate court on a subsequent appeal. *Hiatt v. Illinois Tool Works*, 2018 IL App (2d) 170554, ¶ 18. The interests promoted by the doctrine include protecting the parties' settled expectations, ensuring the uniformity of decisions, maintaining consistency in the course of a single case, effectuating the proper administration of justice, and ending litigation. *Hiatt*, 2018 IL App (2d) 170554, ¶ 18. So long as there have been no material changes in the facts since the prior appeal, such issues cannot be relitigated in the trial court or reexamined in a second appeal. *In re Christopher K.*, 217 Ill. 2d 348, 365 (2005). The doctrine precludes review only of those legal issues that the court decided in a prior appeal, either expressly or by implication, but it does not apply to *dicta*. *Hiatt*, 2018 IL App (2d) 170554, ¶ 27.

¶ 43    Here, the facts pertaining to the issues in *Muzumdar I* have not changed, nor was our holding in that appeal *dicta*.  There are two types of *dicta*. *Obiter dicta* are comments in a judicial opinion that are unnecessary to the disposition of the case. *Exelon Corp. v. Department of Revenue*, 234 Ill. 2d 266, 297 (2009). Judicial *dicta* are comments in a judicial opinion that are unnecessary to the disposition, but which involve an issue that was briefed and argued by the parties. *Exelon*, 234 Ill. 2d at 297.

¶ 44    In *Muzumdar I*, the issue was whether the trial court properly granted summary judgment in Casey's favor because plaintiffs filed suit beyond the statute of limitations. *Muzumdar I*, slip order at p. 9. We held that Casey established her factual position on her statute-of-limitations defense. *Muzumdar I*, slip order at p. 18. We next said that plaintiffs could avail themselves of section 13-215 of the Code to toll the statute of limitations beyond 1998 only if they could establish facts to show that Casey affirmatively concealed plaintiffs' cause of action. M*uzumdar I*, slip order at p. 20. We further stated that, if plaintiffs could show that Casey affirmatively concealed the cause of action, then a genuine issue of material fact as to when plaintiffs discovered the fraud would exist to defeat summary judgment in Casey's favor. *Muzumdar I*, slip order at p. 19.

¶ 45    We held that Pratima's 1993 conversation with Casey, in which Casey denied that the roof leaked or that she made roof repairs, would have established a genuine issue of material fact as to when plaintiffs discovered the fraud. *Muzumdar I*, slip order at p. 20. Thus, because Haas did not file the Pratima affidavit and we could not consider it, plaintiffs could not obtain a reversal and a remand for further proceedings. *Muzumdar I*, slip order at p. 20. Consequently, our comment that Casey's 1993 denials concealed plaintiffs' cause of action was necessary to the disposition of the appeal. Accordingly, we reject Konicek's attempt to relitigate that issue.

¶ 46               B. Whether *Muzumdar II* Was Law of the Case as to Haas

¶ 47    Having established that Haas's negligence caused plaintiffs to lose their cause of action against Casey, the next question is whether Konicek's failure to obtain a valid second extension of the tolling agreement caused plaintiffs to lose their cause of action against Cooney *and Haas*. In *Muzumdar II*, this court held that Cooney was properly dismissed from plaintiffs' malpractice suit because plaintiffs filed suit beyond the statute of limitations. *Muzumdar II*, 2011 IL App (2d) 100884-UB, ¶ 21. Plaintiffs argue that the law-of-the-case doctrine bars the suit against Haas. Konicek asserts that the law-of-the-case doctrine does not apply, because Haas was not a party to the appeal and the issues surrounding Haas's liability were different from those concerning Cooney's. The trial court (Judge Sutter) found that plaintiffs' cause of action against Haas remained "viable and pending" despite our decision in *Muzumdar II* based on (1) the court's determination that Haas signed the second extension to the tolling agreement, and (2) Haas was not a party to the appeal in *Muzumdar II*.

¶ 48    The law-of-the-case doctrine is not binding on the trial court in a subsequent stage of the litigation when (1) different issues are involved, (2) different parties are involved, or (3) the underlying facts change. *Preferred Personnel Services, Inc. v. Meltzer, Purtill & Stelle, LLC*, 387 Ill. App. 3d 933, 947 (2009).

¶ 49    It is undisputed that Haas was not a party to the 2011 appeal. This alone would defeat plaintiffs' contention that the law-of-the-case doctrine applies (see *Preferred*, 387 Ill. App. 3d at 947 (legal malpractice defendants who were not parties to an appeal were not bound by the law-of-the-case doctrine)), but for plaintiffs' argument that Haas was in privity with Cooney. At oral argument, both sides agreed that Haas was employed as Cooney's associate attorney when plaintiffs entered into the attorney-client relationship with Haas. Both sides also agreed at oral argument that the record is unclear as to when the Haas-Cooney relationship ended. Plaintiffs cite

*State Farm Fire & Casualty Co. v. John J. Rickhoff Sheet Metal Co.*, 394 Ill. App. 3d 548, 560 (2009), for the proposition that vicarious liability is a relationship that establishes privity for purposes of the preclusive effects of a judgment. However, *State Farm* involved the doctrines of *res judicata* and collateral estoppel. *State Farm*, 394 Ill. App. 3d at 588. Plaintiffs have not cited any case holding that the law-of-the-case doctrine binds privies who were not parties to a prior appeal. At oral argument, plaintiffs acknowledged that their research disclosed no such case. Similarly, this court's research uncovered no such case. Accordingly, we decline to apply the law-of-the-case doctrine to hold Haas liable.

¶ 50    Nevertheless, plaintiffs maintain that this court's reasoning in *Muzumdar II* should prevail to hold Haas liable. In *Muzumdar II*, the issue was whether the second extension of the tolling agreement was effective where Cooney did not sign it. *Muzumdar II*, 2011 IL App (2d) 100884-UB, ¶ 17-18. This court held that paragraph 13 of the tolling agreement, which required any extension to be in writing and executed by all parties, was not complied with, thereby rendering the purported second extension ineffective. *Muzumdar II*, 2011 IL App (2d) 100884-UB, ¶ 21. However, because the record indicates that plaintiffs may have entered into side agreements with Haas—of which Cooney was unaware—bypassing the tolling agreement, our decision in *Muzumdar II* is not necessarily authority that the statute of limitations expired as to Haas before plaintiffs filed suit.

¶ 51            C. Whether Plaintiffs' Malpractice Suit Was Premature

¶ 52    At oral argument, Konicek contended for the first time, pursuant to *Lucey v. Law Offices of Pretzel & Stouffer, Chartered*, 301 Ill. App. 3d 349 (1998), that plaintiffs filed suit prematurely. Konicek argued that plaintiffs had to prosecute the suit against Haas and that a judgment in Haas's favor was required before plaintiffs could establish the requisite elements of a legal malpractice

action. Ordinarily, arguments raised for the first time at oral argument are forfeited. *Osten v. Northwestern Memorial Hospital*, 2018 IL App (1st) 172072, ¶ 23. However, in fairness, this issue was raised in response to a question by the court, and both parties discussed it, so we will address it.

¶ 53     In *Lucey*, the appellate court held that a plaintiff cannot bring a malpractice suit until the underlying case is resolved and he or she incurs damages directly attributable to counsel's neglect. *Lucey*, 301 Ill. App. 3d at 353. Here, Konicek argues that plaintiffs incurred no damages as a result of Haas's neglect, because they allowed the suit against Haas to be dismissed for want of prosecution. The court in *Lucey* emphasized that its holding depended on the procedural context of that case. *Lucey*, 301 Ill. App. 3d at 353. In contrast, our case presents a unique procedural twist, namely, that the case was dismissed as to Cooney but proceeded against Haas. Ultimately, the issue is not whether the malpractice suit was premature, but whether the suit against Haas was still viable when Konicek withdrew. If it was, then Nathanson's conduct proximately caused plaintiffs' loss, as the trial court found.

¶ 54     D. The Proximate Cause of Plaintiffs' Loss of Their Cause of Action Against Haas

¶ 55     The trial court relied on *Mitchell v. Schain, Fursel & Burney, Ltd.,* 332 Ill. App. 3d 618 (2002), in finding that Nathanson's failure to pursue the suit against Haas proximately caused plaintiffs' loss of their cause of action against Haas. In *Mitchell*, the plaintiff's first attorneys negligently allowed the plaintiff's lawsuit against his neighbor to be dismissed for want of prosecution. *Mitchell*, 332 Ill. App. 3d at 619. Unaware of the DWP, the plaintiff discharged his attorneys and hired a successor attorney, who failed to vacate the DWP and reinstate the action pursuant to section 13-217 of the Code. *Mitchell*, 332 Ill. App. 3d at 619. Plaintiff then sued both sets of attorneys for malpractice. *Mitchell*, 332 Ill. App. 3d at 619. The trial court granted summary

judgment in favor of the first attorneys, finding that the second attorney's negligence was a superseding cause of the plaintiff's loss because the lawsuit was "viable" when the second attorney took over representation. *Mitchell*, 332 Ill. App. 3d at 619, 620. The appellate court affirmed. *Mitchell*, 332 Ill. App. 3d at 623. The appellate court held that there "could be circumstances" under which the first attorney would be the proximate cause of the plaintiff's damages, such as "where his acts or omissions leave doubt about the subsequent viability of [the] plaintiff's claim after his representation ends." *Mitchell*, 332 Ill. App. 3d at 621. In that situation, the court said, it would be for the jury to determine whether the case was "reasonably viable" at the time the first attorney was discharged. *Mitchell*, 332 Ill. App. 3d at 621. Konicek contends that, as in *Mitchell*, plaintiffs' suit against Haas was "viable" when Konicek ended their representation.

¶ 56    Plaintiffs argue that *Mitchell* is inapplicable. Rather, they rely on *Lopez v. Clifford Law Offices, P.C.*, 362 Ill. App. 3d 969 (2005). In *Lopez*, the plaintiff hired the defendant attorneys to represent him in a wrongful death lawsuit against a municipality. *Lopez*, 362 Ill. App. 3d at 970. Several months later, the defendant informed the plaintiff that the firm was unable to continue representing him, but it erroneously informed the plaintiff that the statute of limitations for filing suit was two years instead of one year. *Lopez*, 362 Ill. App. 3d at 970. The plaintiff hired a successor attorney, who filed suit after the expiration of the statute of limitations. *Lopez*, 362 Ill. App. 3d at 970. The plaintiff sued both sets of attorneys for malpractice. *Lopez*, 362 Ill. App. 3d at 973. The trial court dismissed the first attorneys on the basis that the plaintiff's lawsuit was still "viable" when the attorneys ceased their representation. *Lopez*, 362 Ill. App. 3d at 973. The appellate court reversed, holding that, because the plaintiff did not retain successor counsel until after the expiration of the statute of limitations, successor counsel could not have "cured" the

problem that was created by the first attorneys' incorrect advice. *Lopez*, 362 Ill. App. 3d at 981-82.

¶ 57    Here, plaintiffs argue that the statute of limitations ran as to Haas before Konicek withdrew so that their case against Haas was not "viable" when Nathanson began representing plaintiffs. "Viable" in this context is a term of art. If Nathanson, as successor counsel, could not have cured the problem created by Konicek, *i.e.*, if Konicek filed suit beyond the statute of limitations, then the Haas suit was not viable. See *Lopez*, 362 Ill. App. 3d at 981-82.

¶ 58    We cannot determine proximate cause as a matter of law. Judge Bongiorno, who denied Haas's motion to dismiss, did so without prejudice to Haas pleading the statute of limitations as an affirmative defense. The statute of limitations is an affirmative defense that must be pleaded and proved by the defendant. *Findley v. Posway*, 118 Ill. App. 3d 824, 827 (1983). Thus, Judge Bongiorno recognized that, as to Haas, the statute of limitations was a factual issue. To illustrate: whether plaintiffs entered into side agreements to extend the statute of limitations as to Haas, and the terms of those agreements, were issues of fact. At oral argument, Konicek noted other factual issues, such as whether Haas was estopped from raising the statute of limitations where he falsely promised to file the additional appellate brief. Thus, whether Nathanson was a superseding cause of plaintiffs' loss depends upon the trier of fact's determination of these issues and possibly others.

¶ 59    Despite the existence of factual issues, Konicek argues, summary judgment in their favor was appropriate because plaintiffs failed to present expert testimony as to the case against Cooney and Haas and as to the present case. Generally, a legal malpractice plaintiff must establish through expert testimony the standard of care against which a defendant attorney's conduct must be measured, and the failure to do so will be fatal to the plaintiff's cause of action. *Nettleton*, 387 Ill. App. 3d at 757. The exception is where the common knowledge or experience of lay persons is

extensive enough to recognize or infer negligence from the facts, or where an attorney's negligence is so grossly apparent that a lay person can easily assess it. *Nettleton*, 387 Ill. App. 3d at 757. Here, plaintiffs argue, citing *House v. Maddox*, 46 Ill. App. 3d 68 (1977), that expert testimony is not required, because lay persons can easily assess when the statute of limitations runs against the client. The court in *House* held that expert opinion is not required where (1) no issue is raised as to the defendant's responsibility for allowing the statute of limitations to run, (2) the defendant's negligence is apparent and undisputed, and (3) the record discloses obvious and explicit carelessness in the defendant's failure to meet the standard of care. *House*, 46 Ill. App. 3d at 73. In *House*, no expert testimony was required where the defendant attorney unsuccessfully attempted to reach a settlement with an insurance company and then filed suit eight months after the statute of limitations on a dog bite ran. *House*, 46 Ill. App. 3d at 73. The court held that the attorney's failure to comply with the statute of limitations was "so grossly apparent" that a layperson would have no difficulty in appraising it. *House*, 46 Ill. App. 3d at 73.

¶ 60     In the present case, the trier of fact can determine without expert opinion whether Haas was negligent in failing to file a response to Casey's motion for summary judgment, as that claimed error would be grossly apparent to a layman. The Konicek situation is more complicated due to the factual issues surrounding any side agreements with Haas to extend the statute of limitations. However, a layman could certainly appraise whether any such agreements existed and whether Konicek filed suit within the time agreed upon by the parties. Accordingly, we agree with plaintiffs that no expert opinion is necessary.

¶ 61          E. Whether Plaintiffs' Damages in the Case Against Haas Are Speculative

¶ 62     Konicek argues that no one "could possibly predict" the outcome of the underlying malpractice case against Haas had plaintiffs prosecuted it. According to Konicek, the

unanswerable questions, such as the effect of any side agreements between Konicek and Haas or whether plaintiffs could raise an equitable estoppel theory on the basis of Haas's repeated promises to file the appellate brief, preclude plaintiffs from establishing damages. This is a cousin to the *Lucey* argument, which we discussed above. As noted, we believe that the more appropriate analysis under our facts is whether the Haas suit was viable after Konicek withdrew. Also, we do not view these fact questions as reflecting on damages, but as liability issues that precede the question of damages. There may well be more factual issues that arise in the course of the litigation, which are not mentioned in this Order. As to damages, Pratima testified at a deposition that plaintiffs' cost to repair the leaky roof was over one hundred thousand dollars and that plaintiffs spent considerable sums in attorney fees to try to recover their losses. Consequently, we determine that factual issues preclude the grant of summary judgment in Konicek's favor. Accordingly, we reverse and remand for further proceedings.

¶ 63                           III. CONCLUSION

¶ 64    For the reasons stated, we reverse the grant of summary judgment and remand for further proceedings.

¶ 65    Reversed and remanded.